UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STEVEN ORICK,                                    Case No. 1:10-cv-871

    Plaintiff,                                  Spiegel, J.
                                                 Bowman, M.J.
v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Steven Orick filed this Social Security appeal in order to challenge the Defendant's findings that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. For the reasons explained below, I conclude that this case should be REMANDED because the finding of non-disability is not supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

On August 30, 2006, Plaintiff filed an application for Disability Insurance Benefits (DIB), alleging a disability onset date of August 20, 2004[1] due to physical and mental impairments. (Tr. 109-111). After Plaintiff's claims were denied initially and upon reconsideration, he requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). An administrative hearing was held on July 30, 2009. (Tr. 18-71). At the hearing, ALJ Samuel A. Rodner heard testimony from Plaintiff and Micha Daoud, an

---

[1] At the administrative hearing, Plaintiff amended his onset date to March 15, 2005. (Tr. 26).

1

impartial vocational expert. On September 4, 2009, the ALJ denied Plaintiff's application in a written decision. (Tr. 10-17).

The record on which the ALJ's decision was based reflects that Plaintiff graduated from high school and has past relevant work as a cabinet maker. (Tr. 15). Plaintiff was born in 1956 and was 49 years old at the time of his alleged onset date. Upon consideration of the record, the ALJ found that Plaintiff had the following severe impairments: "low back pain and bilateral shoulder pain." (Tr. 12). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1, and Plaintiff does not specifically argue that the ALJ erred in that conclusion before this Court. (Tr. 12). The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform a range of light work with the following exceptions:

> He can lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently. He can sit for at least two hours at a time, up to at least six hours per day. He can stand one hour at a time up to six hours per day. He can ambulate 30 minutes at a time. After one hour, the claimant would have to sit for one minute or two before he could stand and walk again. It is found that the claimant can do as above without the use of any ambulatory aid. The claimant should avoid climbing ladders, ropes or scaffolds, and he should avoid crawling. He can occasionally bend, stoop, squat and kneel. He can do no repetitive or constant overhead reaching with either shoulder. There are no limitations regarding handling or fingering.

(Tr. 13). Based upon testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that, while the Plaintiff is unable to perform his past relevant work, he can nonetheless perform jobs that exist in significant numbers in the national economy. (Tr. 16-17). Accordingly, the ALJ

2

determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB benefits. (Tr. 18-19).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff maintains that the ALJ erred by: 1) improperly weighing the opinion evidence; 2) failing to properly evaluate Plaintiff's credibility; and 3) failing to pose a valid hypothetical question to the vocational expert. As discussed below, the Court finds that the ALJ improperly evaluated the medical evidence, and therefore his RFC assessment is not supported by substantial evidence.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a

whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking

4

benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. Specific Assignments of Errors**

*1. The ALJ's Weighing of the Medical Evidence*

Plaintiff's first assignment or error asserts that the ALJ "failed to follow the treating physician rule." Specifically, Plaintiff argues that the ALJ erred in rejecting the opinion of his treating physician and giving significant weight to the findings of the state-agency physicians.

*A. Dr. Nickell*

The record contains treatment notes from Dr. Nickell, an internist, from August 2002 through February 2007. (Tr. 301-323, 370-394). Dr. Nickell treated Plaintiff for back pain, anger management and alcoholism. On April 14, 2005, Dr. Nickell completed a "Basic Medical" form wherein he indicated that Plaintiff's diagnoses were asthma, chronic back pain, and alcoholism. (Tr. 301-02). Dr. Nickell further indicated that Plaintiff's prognosis was "poor but stable." (Tr. 301). Dr. Nickell found that Plaintiff was limited in his ability to stand and sit, however, he could not provide an assessment of Plaintiff's specific physical limitations because he had not seen Plaintiff for over one year prior to that day. (Tr. 302).

On July 12, 2006, Dr. Nickell wrote a "To Whom it May Concern" letter in which he stated:

> Mr. Orick has a lifetime history of alcoholism. He also has a history of anger management disorder. He also has had chronic recurrent low back pain since falling of [sic] a roof in 1986. Mr. Orick has not be able to hold a job for long enough over the last five years to get insurance to allow adequate treatment of all these problems. Without treatment of these problems Mr. Orick is not medically able to work. I believe it is in Mr. Oricks best interest and the State of Ohio to give Mr. Orick a medical card so he may get his medical problems treated and possibly return to work. Otherwise he will need to apply for disability.

(Tr. 313).

In a June 2008 letter, Dr. Nickell opined that Plaintiff "is totally disabled without consideration of any present drug and/or alcohol use. Drug and/or alcohol use is not a material cause of this individual's disability." (Tr. 400).

Finally, in April 2009, Dr. Nickell competed a "Multiple Impairment Questionnaire" wherein he indicated that he diagnosed Plaintiff with "chronic back [and] neck pain" and "chronic shoulder pain." (Tr. 402). Dr. Nickell listed the clinical findings that supported his diagnosis as "chronic back, neck, shoulder, [and] knee pain." (Tr. 402). He believed Plaintiff's pain was due to degenerative joint disease. (Tr. 403). Dr. Nickell opined that Plaintiff could sit for only two hours in an eight-hour workday and could stand/walk for only two hours in an eight-hour workday. (Tr. 404). Dr. Nickell indicated that Plaintiff could lift and carry five pounds frequently and 10 pounds occasionally. (Tr. 405). He also found that Plaintiff had significant limitations on performing repetitive reaching, handling, fingering, and lifting, and "moderate" limitations in using arms for reaching. (Tr. 405-06). Dr. Nickell stated that Plaintiff required four or five unscheduled breaks each day, with each break lasting 10-15 minutes. He also found that Plaintiff would miss

6

three or more workdays each month. (Tr. 407-08). Dr. Nickell's limitations precluded all gainful work-activity.

The ALJ gave "no weight" to Dr. Nickell's 2009 questionnaire. (Tr. 15). The ALJ noted that Dr. Nickell was a primary care physician, and not a specialist. The ALJ noted further that Dr. Nickell's assessment "completely fails to provide any specific clinical findings or laboratory or diagnostic test results . . . ." *Id.* The ALJ also stated that Dr. Nickell's treatment notes provided "little to no information regarding clinical signs or laboratory findings. *Id.* Plaintiff argues that Dr. Nickell's disability opinions were entitled to controlling weight because of his longitudinal treatment history with Plaintiff. Notably, Plaintiff asserts that "although Dr. Nickell's records are almost entirely illegible and he did not send Plaintiff for any diagnostic imaging these facts are not justifiable bases for giving his opinion on Mr. Orick's limitations no weight." (Doc. 11 at 9). While such facts are properly considered by the ALJ, the undersigned nonetheless finds that the ALJ's decision does not adequately indicate that he properly considered Dr. Nickell's treatment notes and functional assessments.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency

7

of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.*, No. 09–6081, 2010 WL 3521928, at *6 (6th Cir. Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

As such, the opinions of treating and examining sources are generally entitled to more weight than opinions of consulting and non-examining sources. 20 C.F.R. § 404.1527(d); see *also West v. Comm'r Soc. Sec. Admin.*, 240 Fed. Appx. 692, 696 (6th Cir. 2007) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981)) ("[R]eports from treating physicians generally are given more weight than reports from consulting physicians ...."). However, an ALJ need not credit a treating physician opinion that is conclusory and unsupported. *See Anderson v. Comm'r Soc. Sec.*, 195 Fed. Appx. 366, 370 (6th Cir. 2006) ("The ALJ concluded, properly in our view, that the [treating physician's] treatment notes did not support and were inconsistent with his conclusory assertion that appellant was disabled."); *see also Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008) (citing *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 287 (6th Cir. 1994)) (holding that an ALJ need not credit a treating physician's conclusory opinions that are inconsistent with other evidence).

Additionally, as a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue*, 774 F. Supp.2d 875, 877 (N.D. Ohio 2011); *see also Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544–546 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Commissioner of Social Security*, 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999). *See also Hurst v. Secretary of Health and Human Services*, 753 F.2d 517 (6th Cir. 1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82-62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

When an ALJ fails to mention relevant evidence in his or her decision, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Morris v. Secretary of Health & Human Servs.*, Case No. 86-5875, 1988 WL 34109, at * 2 (6th Cir. Apr. 18, 1988) (*quoting Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)); *see also Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996) (The Court cannot uphold the decision of an ALJ, even when there may be sufficient evidence to support the decision, if "the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.").

Here, the ALJ rejected Dr. Nickell's assessment because he failed to provide "any specific clinical findings or laboratory or diagnostic test results . . . ." *Id.* The ALJ also found that Dr. Nickell's treatment notes provided "little to no information regarding clinical signs or laboratory findings. *Id.* However, other than these statements, the ALJ fails to identify or discuss Dr. Nickell's treatment notes in any meaningful way, nor does the ALJ describe the limitations found by Dr. Nickell in his 2009 assessment. As noted above, Dr. Nickell provided several other assessments relating to Plaintiff's functional limitations, however, the ALJ's decision fails to identify or even mention those assessments. Without a discussion of such evidence, the Court is unable to determine if the ALJ properly considered the factors outlined in 20 C.F.R. § 404.1527(d)(2) in weighing Dr. Nickell's opinions, and if he properly discounted Dr. Nickell's assessment because it was inconsistent with his treatment notes. *See Wilson*, 378 F.3d 541, 544-546.

Furthermore, as indicated by Plaintiff, Dr. Nickell's treatment notes are generally illegible.[2] As a result, Plaintiff asserts that the ALJ should have re-contacted Dr. Nickell for clarification or supplementation. 20 C.F.R. § 404.1512(e) sets forth the procedure for re-contacting a claimant's treating physician when the evidence is inadequate for the Agency to determine whether the claimant is disabled. Such a duty to "re-contact" occurs only when the ALJ does not have sufficient information to determine if a claimant is disabled.

---

[2] Upon review of such notes, the Court is unable to discern any information contained therein.

The evidence in this case consists primarily of Dr. Nickell's treatment notes, emergency room and detox records relating to Plaintiff alcoholism[3], and the evaluations of the one-time examining and reviewing state agency physicians and psychologists. Thus, Dr. Nickell is the only treating physician of record and his treatment of Plaintiff appears to constitute the majority of Plaintiff's medical care during the relevant period.[4] Although the treatment notes from Dr. Nickell are part of the record, the notes are illegible, and therefore such records are inadequate to determine disability. *See* 20 C.F.R. § 404.1512(e) and 20 C.F.R. § 416.912(e). The undersigned recognizes that Dr. Nickell did not send Plaintiff for any specific diagnostic testing, and that an ALJ is not required to give controlling weight to the opinion of a treating source if the opinion is not well-supported by the clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. However, if legible, Dr. Nickell's treatment notes may contain other objective evidence,[5] including examination findings (such as range of motion and neurological signs) that support his opinions. Furthermore, as explained below, the assessments by the State Agency physicians do not provide substantial evidence that Plaintiff is able to perform a range of light work. Under the facts of this case, and given Plaintiff's treatment history with Dr. Nickell, the undersigned finds that the ALJ should have re-

---

[3] Plaintiff does not challenge the ALJ's findings relating to his alcoholism or his mental health.

[4] The record also indicates that Plaintiff was seen in the emergency room on February 6, 2007, after inuring his "left great toe." (Tr. 324-328). X-rays of Plaintiff toe showed no acute fracture and some arthritic changes in the joint of the toe. (Tr. 324). Plaintiff was diagnosed with a foot contusion and released.

[5] Objective medical evidence consists of medical signs and laboratory findings as defined in 20 C.F.R. § 404.1528(b) and (c). *See* 20 C.F.R. § 404.1512(b)(1). "Signs" are defined as "anatomical, physiological, or psychological abnormalities which can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques. . . ." 20 C.F.R. § 404.1528(b).

contacted Dr. Nickell and sought supplementation or clarification of his treatment notes and assessments.

In light of such errors, the undersigned finds that the ALJ erred in evaluating Dr. Nickell's opinions. This matter should be remanded for further proceedings so that the ALJ can properly evaluate the medical evidence of record in accordance with agency regulations and controlling law.

B. *Weight to the State-Agency Physicians*

In reaching his conclusion that Plaintiff could perform light work, the ALJ gave great weight to the functional assessment of Dr. Ray, a state agency physician, who found Plaintiff capable of performing light work. The ALJ also gave great weight "to the state agency medical source statement dated December 13, 2006," to the extent it does not disagree with Dr. Ray's assessments. (Tr. 14)

In December 2006, Dr. Ray, a board certified physical medicine and rehabilitation specialist, examined Plaintiff at the request of the state agency. (Tr. 337-39). At that time, Plaintiff complained of "intermittent" low back pain that occurred "every other month. (Tr. 337). Upon examination, Dr. Ray noted that Plaintiff ambulated with a "mild stiff gait pattern" when walking independently, but when he used a cane, he actually developed "more of an abnormal gait pattern" (Tr. 338). Dr. Ray also noted that Plaintiff had no joint abnormalities, normal range of motion, and a normal sensory examination (Tr. 338). Dr. Ray further stated that an x-ray of Plaintiff's lumbar spine showed "[m]ild to moderate degenerative disc disease," which was consistent with a low back sprain and arthritis. (Tr. 339-40). Dr. Ray opined that Plaintiff was able to lift and carry up to 20 pounds; and he could sit for two hours at a time, stand for one hour at a time, and walk for 30 minutes at a time. (Tr. 339). Dr. Ray found that Plaintiff could occasionally

12

bend, stoop, squat, and kneel, but he should avoid crawling, climbing, and repetitive overhead reaching. (Tr. 339). Plaintiff was able to handle objects without difficulty. (Tr. 339).

On December 13, 2006, Dr. Gerald Klyop reviewed Plaintiff's medical records and provided a physical capacity assessment at the request of the state agency. (Tr. 362-69). Dr. Klyop determined that Plaintiff could perform a range of light work. Specifically, Dr. Klyop found that Plaintiff could sit 6 hours in an 8-hour day and stand 6 hours in an 8-hour day. (Tr. 363). In reaching those conclusions, Dr. Klyop indicated that he gave considerable weight to Dr. Ray's assessment. (Tr. 367).

The ALJ noted that Dr. Ray performed a thorough musculoskeletal/neurological exam and that his findings were consistent with a reduced range of light work. (Tr. 15). Other than this statement, the ALJ does not provide any other reasons for affording significant weight to Dr. Ray' s assessment. The ALJ also does not provide any additional rationale for affording great weight to the findings of Dr. Kylop. Plaintiff asserts that the ALJ erred in relying on the state agency physicians' opinions over those of his treating source. Plaintiff also asserts that ALJ's RFC, based on Dr. Ray's assessment is not supported by substantial evidence because Dr. Ray did not provide the specific limitations as found by the ALJ. The undersigned agrees.

As noted by Plaintiff, it is clearly established law that the opinion of a non-treating "one-shot" consultative physician or of a medical advisor cannot constitute substantial evidence to overcome the properly supported opinion of a physician who has treated a claimant over a period of years. *See Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983). As detailed above, Dr. Nickell treated Plaintiff for more than 5 years. However, on the current record, it is unclear whether his

findings were properly supported and therefore entitled to deference. Thus, the undersigned cannot determine whether the ALJ's reliance on Dr. Ray's assessment was proper. The supplemental information obtained from Dr. Nickell on remand may require the ALJ to re-evaluate the weight he assigned to Dr. Ray. Accordingly, Dr. Ray's findings should also be reconsidered on remand.

Furthermore, Plaintiff argues that Dr. Ray did not provide an opinion on how long Plaintiff "was able to sit, stand, or walk in *total* over the course of an 8-hour day." Thus, in determining such sit/stand/walk limitations in his RFC assessment, Plaintiff argues that the ALJ improperly acted as a medical expert. As such, Plaintiff maintains that the ALJ's RFC assessment is not supported by substantial evidence.

While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, he is not permitted to make his own evaluations of the medical findings. As recognized by this Court, "[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record." *Mason v. Comm' r of Soc. Sec.*, No. 1:07–cv–51, 2008 WL 1733181, at *13 (S.D. Ohio April 14, 2008) (Beckwith, J.; Hogan, M.J.) (citing *Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963); *Clifford v. Apfel*, 22.7 F.3d 863, 870 (7th Cir. 2000); *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3rd Cir. 1985); *Sigler v. Sec'y of H.H.S.*, 892 F.Supp. 183, 187-88 (E.D. Mich. 1995)). *See also Rosa v. Callahan*, 168 F.3d 72, 78–79 (2nd Cir. 1999) ("[T]he ALJ cannot arbitrarily substitute his own opinion for competent medical opinion."); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

The Commissioner asserts that Dr. Klyop specifically addressed the total number of hours that Plaintiff could sit/stand/walk in a day, and therefore the ALJ's RFC assessment is substantially supported. While this may be correct, the ALJ's decision does not indicate that he made such a finding. As noted above, the ALJ's decision fails to mention Dr. Klyop by name and notes only that "[i]n so far as it does not disagree with Dr. Ray's assessments, great weight is also placed on the state agency physical source statement dated December 13, 2006." (Tr. 14). There is no indication that the ALJ relied on Dr. Klyop's assessment in determining Plaintiff's sit/stand/walk limitations. Because the ALJ fails to sufficiently explain the rationale in support of his RFC determination in this regard, the undersigned is unable to engage in meaningful review of the ALJ decision. As a result, the ALJ must reconsider the opinion evidence of record, it is also necessary for the RFC determination to be considered on remand.

2. *Plaintiff's Credibility*

Plaintiff's next assignment of error asserts that the ALJ erred in finding that his testimony was not entirely credible. In finding Plaintiff less than fully credible, the ALJ cited to Plaintiff's inconsistent testimony and statements relating to his alcohol use, as well as his conservative treatment history. (Tr. 14). Plaintiff argues that the proffered reasons given by the ALJ were insufficient to reject Plaintiff's testimony and subjective complaints.

A disability claim can be supported by a claimant's subjective complaints, as long as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d at 475. "[I]f disabling severity cannot be shown by objective medical evidence alone, the Commissioner will also consider other factors, such as daily activities and the type and dosage of medication taken." *Id.* (citing 20

15

C.F.R. §404.1529(c)(3)).[6] However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476. (citations omitted). An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

Plaintiff argues that his inconsistent testimony relating to his alcoholism should not be used to invalidate his complaints of back pain. Plaintiff asserts he did not have health insurance and therefore could not afford speciality treatment or physical therapy. Plaintiff maintains that the fact that he could not afford treatment should not be held against him. While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed

---

[6] The regulations provide that the ALJ's credibility decision must include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-7p.

in SSR 96-7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240-41 (6th Cir. 2002). The ALJ's credibility determination properly considered several of the requisite factors listed SSR 96-7p, and therefore appears to comport with Agency regulations and controlling law.

Nonetheless, in light of the ALJ's failure to properly consider and evaluate the medical evidence as outlined above, on remand, the ALJ should also be instructed to properly assess the credibility of Plaintiff's subjective complaints of pain and provide reasons for his credibility determination that are sufficiently specific to make clear the weight he gave Plaintiff's statements and the reasons for that weight.

### 3. The ALJ's hypothetical to the Vocational Expert

Finally, Plaintiff asserts that the ALJ's hypothetical questions to the vocational expert did not accurately portray Plaintiff's impairments and therefore the ALJ's decision is not substantially supported. Specifically, Plaintiff challenges the ALJ's sit/stand limitations and the testimony of the vocational expert relating to Plaintiff's need to alternate between sitting and standing. Plaintiff also asserts that the ALJ failed to determine whether the testimony of the vocational expert was consistent with the Dictionary of Occupational Titles (DOT).

At Step 5 of the sequential evaluation process, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Commissioner of Social Sec.,* 336 F.3d 469, 474 (6th Cir. 2003). The Commissioner may meet his burden through reliance on a vocational expert's testimony in response to a hypothetical question. To constitute substantial

17

evidence in support of the Commissioner's burden, the hypothetical question posed to the vocational expert must accurately reflect the claimant's physical and mental limitations. *See Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010); *Howard v. Commissioner of Soc. Sec.,* 276 F.3d 235, 241 (6th Cir. 2002); *Varley v. Secretary of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987).

As detailed above, the ALJ's decision cannot be affirmed as it stands, and this matter must be remanded for further fact-finding. As such, the undersigned is unable to determine if the ALJ's hypothetical question to the vocational expert accurately portrayed Plaintiff's impairments. *See White v. Commissioner of Social Sec.*, 312 Fed. Appx. 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's physical and mental impairments). Because the court is unable to determine whether the ALJ's hypothetical question accurately portrayed Plaintiff' impairments, the vocational expert's testimony in response thereto does not constitute substantial evidence that Plaintiff could perform the jobs identified by the VE. Accordingly, this issue will also need to be reconsidered in light of any new findings on remand.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the

Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of his alleged onset date. *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g).

2. On remand, the ALJ be instructed to: 1) request supplemental or clarifying evidence from Dr. Nickell in support of disability opinions, including clinical findings and diagnostic testing; 2) properly assess and evaluate the opinion evidence relating to Plaintiff's impairments in accordance with agency regulations and controlling law; 3) properly consider Plaintiff's credibility and complaints of pain, and provide a clear explanation for the conclusions reached therein; and 4) provide a hypothetical question to the vocational expert that accurately portrays Plaintiff's impairments and resolve any conflicts between the evidence provided by the vocational expert and the DOT.

3. As no further matters remain pending for the Court's review, this case be **CLOSED.**

              *s/Stephanie K. Bowman*
              Stephanie K. Bowman
              United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

STEVEN ORICK,                                                      Case No. 1:10-cv-871

      Plaintiff,                                       Spiegel, J.
                                                           Bowman, M.J.

  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).